**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| **BRITTNEY D. BOATWRIGHT, as** | * | |
| **Mother and Next Best Friend of D.B.W.,** | * | |
| **a Minor Child and PATRICIA B.** | * | |
| **SWAIN, as Great grandmother and Next** | * | |
| **Best Friend of D.B.W., a Minor Child,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **-VS-** | * | |
| | * | |
| **CANDICE L. BROCE, in her Individual** | * | |
| **and Official Capacity as** | * | |
| **COMMISSIONER, GEORGIA** | * | |
| **DEPARTMENT OF HUMAN** | * | |
| **SERVICES; LASHAWNDA ASKEW** | * | **CIVIL ACTION NO.:  CV222-_____** |
| **and JANE/JOHN DOE NUMBER ONE** | * | |
| **in their Individual and Official** | * | |
| **Capacities as Directors of the GLYNN** | * | |
| **COUNTY DEPARTMENT OF FAMILY** | * | |
| **AND CHILDREN SERVICES;** | * | |
| **BRANDY MCCORKLE; JANE /JOHN** | * | |
| **DOE NUMBER TWO and JANE/JOHN** | * | |
| **DOE NUMBER THREE in their** | * | |
| **Individual and Official Capacities as** | * | |
| **Case Workers for the GLYNN COUNTY** | * | |
| **DEPARTMENT OF FAMILY AND** | * | |
| **CHILDREN SERVICES** | * | |
| | * | |
| **Defendants.** | * | |

<u>**BRITTNEY D. BOATWRIGHT**</u>
<u>**AND PATRICIA B. SWAIN'S COMPLAINT**</u>
<u>**FOR DAMAGES, EQUITABLE, INJUNCTIVE, AND**</u>
<u>**DECLARATORY RELIEF, PRELIMINARY AND PERMANENT**</u>
<u>**INJUNCTION AND REQUEST FOR IMMEDIATE EMERGENCY HEARING**</u>

**BRITTNEY D. BOATWRIGHT**, as Mother of **D.B.W.**, a Minor Child and **PATRICIA B. SWAIN**, as Great-grandmother of **D.B.W.**, a Minor Child, file Brittney D. Boatwright and Patricia B. Swain's Complaint for Damages, Equitable, Injunctive, and Declaratory Relief, Preliminary and Permanent Injunction and Request for Immediate Emergency Hearing.

## I.  INTRODUCTION

### -1-

**BRITTNEY D. BOATWRIGHT**, as Mother of **D.B.W.** and **PATRICIA B. SWAIN**, as great-grandmother of **D.B.W.**, a Minor Child, and on behalf of **D.B.W.**,  seek damages, equitable, injunctive, declaratory relief, a preliminary and permanent injunction, and an immediate emergency hearing against **DEFENDANTS** for **DEFENDANTS'** violation of  **D.B.W.'S** right to family integrity/family relations in violation of **D.B.W.'S** Fourteenth Amendment rights under the United States Constitution, deliberate indifference, and failure to train under the  Fourteenth Amendment rights under the United States Constitution, and violation of her Fourth Amendment rights under the United States Constitution.

### -2-

At age three, **D.B.W.**, has not reached majority and cannot bring an action on her own. O.C.G.A. § 9-3-90.

### -3-

More than two years ago, **DEFENDANTS JANE/JOHN DOE NUMBERS TWO** and **THREE** seized, or ordered seized, and removed **D.B.W.** from **MS. BOATWRIGHT** and from **MRS. SWAIN'S** custody  without a court  order by directing **MS. BOATWRIGHT** and **MRS.**

**SWAIN'S** to relinquish custody of **D.B.W.** to the putative father, **WARAKAN WARAKANBANCHA**.

**-4-**

These **DEFENDANTS** acted under the authority of the **GLYNN COUNTY DEPARTMENT OF FAMILY AND CHILDREN SERVICES** and the **GEORGIA DEPARTMENT OF HUMAN SERVICES (DEPARTMENT)**.

**-5-**

Later, again without a court order, **DEFENDANT MCCORKLE**, seized and removed **D.B.W.** from the putative father and placed **D.B.W.** with a non-relative, **WINDI STRUBLE**.

**-6-**

Litigation within the Glynn County Juvenile Court and the Glynn County Superior Court continues as a result of these unlawful seizures and removals.

## II.  JURISDICTION

**-7-**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises as a civil rights action under the laws of the United States.

## III. VENUE

**-8-**

Venue properly lies before this Court pursuant to 28 U.S.C. §1391.

**-9-**

The incidents and injuries suffered by **D.B.W.** occurred in this judicial district.

## IV.  PARTIES

**-10-**

**MRS. BOATWRIGHT** and **MRS. SWAIN** resided in this judicial district at all times relevant to this Complaint.

**-11-**

**DEFENDANT BROCE** serves as commissioner of **DEPARTMENT** under which the Glynn County Department of Family and Children Services operates.

**-12-**

**DEFENDANT ASKEW** serves as director of the Glynn County Department of Family and Children Services.

**-13-**

**DEFENDANT  JANE/JOHN DOE NUMBER ONE** served previously as director of the Glynn County Department of Family and Children Services at the time of the initial seizure, or ordered seizure, and removal of **D.B.W.**

**-14-**

Through discovery **MS. BOATWRIGHT** and **MRS. SWAIN** will obtain the identity of **DEFENDANT  JANE/JOHN DOE NUMBER ONE**.

**-15-**

**DEFENDANTS  MCCORKLE,   JANE/JOHN DOE NUMBERS TWO** and **THREE** served as case workers with the  Glynn County Department of Family and Children Services who conducted the initial seizure, or ordered the seizure, and removal of **D.B.W.**

-16-

Through discovery **MS. BOATWRIGHT** and **MRS. SWAIN** will obtain the identity of **DEFENDANTS   JANE/JOHN DOE NUMBERS TWO** and **THREE**.

## V.  STATEMENT OF THE FACTS

-17-

**MS. BOATWRIGHT** gave birth to **D.B.W.** in 2018.

-18-

A DNA test established **MR. WARAKANBANCHA** as **D.B.W.'S** biological father.

-19-

**MS. BOATWRIGHT** and **MR. WARAKANBANCHA** never married.

-20-

**MR. WARAKANBANCHA** has not legitimated **D.B.W.**

-21-

**MR.   WARAKANBANCHA** has legitimation petitions pending in ***Warakan Warakanbancha v. Brittney Boatwright***, Civil Action No.  CE19-00805, Glynn County Superior Court;  *Warakan Warakanbancha v. Brittney D. Boatwright*, Civil Action No.  CE21-00683, Glynn County Superior Court; and *In the Interest of D.B.W.*, Case No. JUV220013, Glynn County Juvenile Court.

-22-

**MS. BOATWRIGHT** and **MR. WARAKANBANCHA** co-parented **D.B.W.** for **D.B.W.'S** first six days life until **MR. WARAKANBANCHA** returned to his daily alcohol intoxication.

**-23-**

**MS. BOATWRIGHT** left **MR. WARAKANBANCHA** due to **MR. WARAKANBANCHA'S** drunkenness.

**-24-**

**MS. BOATWRIGHT** and **D.B.W.** then lived with **MRS. SWAIN** until **D.B.W.** was approximately eight months old.

**-25-**

**MR. WARAKANBANCHA** made a complaint to **DEPARTMENT** concerning **MS. BOATWRIGHT** when **D.B.W.** was approximately nine months old.

**-26-**

**DEPARTMENT** called **MS. BOATWRIGHT** and threatened to take **D.B.W.** if **MS. BOATWRIGHT** did not meet **DEPARTMENT** within fifteen minutes.

**-27-**

**MS. BOATWRIGHT** met with **DEPARTMENT** at Walmart.

**-28-**

**DEPARTMENT** conducted a home check of **MS. BOATWRIGHT'S** home.

**-29-**

**MS. BOATWRIGHT** passed the home check.

**-30-**

Two to three days later, **MS. BOATWRIGHT** failed a drug test.

-31-

**MR. WARAKANBANCHA** then kidnaped **D.B.W.**

-32-

**MS. BOATWRIGHT** reported this to the Brunswick Police Department.

-33-

The Brunswick Police Department ordered **MR. WARAKANBANCHA** to return **D.B.W.** to **MS. BOATWRIGHT**

-34-

**MR. WARAKANBANCHA** complied.

-35-

**DEPARTMENT** immediately threatened to take **D.B.W.** from **MS. BOATWRIGHT** unless **MS. BOATWRIGHT** submitted to a safety plan.

-36-

**MS. BOATWRIGHT** signed a safety plan under coercion.

-37-

**MR. WARAKANBANCHA** then summoned **MS. BOATWRIGHT** and **D.B.W.** to his home allegedly to reconcile.

-38-

While **MS. BOATWRIGHT** prepared a meal at the putative father's home, **MR. WARAKANBANCHA** pressured **MS. BOATWRIGHT** to  drank an alcoholic beverage.

-39-

**MS. BOATWRIGHT** refused, but eventually accepted water from **MR. WARAKANBANCHA**.

**-40-**

**MR. WARAKANBANCHA** then began recording **MS. BOATWRIGHT**.

**-41-**

The recording by the putative father perplexed **MS. BOATWRIGHT**.

**-42-**

**MS. BOATWRIGHT** then answered a knock at the door and lost consciousness.

**-43-**

**MS. BOATWRIGHT** regained consciousness in the presence of police.

**-44-**

**MS. BOATWRIGHT** believed that **MR. WARAKANBANCHA** surreptitiously placed a foreign substance in **MS. BOATWRIGHT'S** water.

**-45-**

After regaining consciousness, **MS. BOATWRIGHT** realized that **MR. WARAKANBANCHA'S** mother and sister had taken **D.B.W.**

**-46-**

**MS. BOATWRIGHT** followed **MR. WARAKANBANCHA'S** mother and sister to retrieve **D.B.W.**.

**-47-**

**MR. WARAKANBANCHA'S** mother and sister drove to the Brunswick Police Department.

**-48-**

There **MR. WARAKANBANCHA'S** mother and sister claimed that **MS. BOATWRIGHT** had overdosed on heroin.

**-49-**

Because **MS. BOATWRIGHT** did not know what substance **MR. WARAKANBANCHA** slipped into **MS. BOATWRIGHT'S** drink, **MS. BOATWRIGHT** wondered how the mother and sister knew this.

**-50-**

The police took **D.B.W.**  from the mother and sister.

**-51-**

The police declined to restore **D.B.W.** to **MS. BOATWRIGHT** due to the putative father's pending complaint with **DEPARTMENT**.

**-52-**

The police provided **MS. BOATWRIGHT** an option to call someone to retrieve **D.B.W.**

**-53-**

**MS. BOATWRIGHT** named **MRS. SWAIN**.

**-54-**

The Brunswick Police Department called **MRS. SWAIN**.

**-55-**

Upon **MRS. SWAIN'S** arrival, the police conveyed **D.B.W.** to **MRS. SWAIN**.

**-56-**

**MR. WARAKANBANCHA** later  admitted to **MS. BOATWRIGHT** that "[he] did it," an admission that he secretly drugged  **MS. BOATWRIGHT**.

-57-

Soon after the mother and sister's failed kidnaping of **D.B.W.**, **DEPARTMENT**, called **MRS. SWAIN** and ordered her and **MS. BOATWRIGHT** to relinquish **D.B.W.** to **MR. WARAKANBANCHA**, again without a court order.

-58-

**MRS. SWAIN** and **MS. BOATWRIGHT** complied because they believed that they could not legally resist the **DEPARTMENT'S** commands because the **DEPARTMENT** represented the State of Georgia and had legal authority to order this.

-59-

**MR. WARAKANBANCHA** reeked of alcohol when he arrived at **MRS. SWAIN'S**.

-60-

**MRS. SWAIN** surrendered   **D.B.W.** to a drunk **MR. WARAKANBANCHA** at **DEPARTMENT'S** command.

-61-

**MRS. SWAIN** reported **MR. WARAKANBANCHA'S** inebriation to **DEPARTMENT**.

-62-

**DEPARTMENT** did nothing.

-63-

While **MR. WARAKANBANCHA** had **D.B.W.**, he regularly called **MRS. SWAIN** for assistant with **D.B.W.**

-64-

On Easter 2021, a drunk **MR. WARAKANBANCHA** arrived at **MRS. SWAIN'S** home with **D.B.W.**

**-65-**

**MR. WARAKANBANCHA** continued to deny **MS. BOATWRIGHT** access to **D.B.W.**
based on the **DEPARTMENT'S** seizures and removals of **D.B.W.** and placement with him.

**-66-**

**MRS. SWAIN** and **MS. BOATWRIGHT** pleaded, unsuccessfully, with the sottish **MR.
WARAKANBANCHA** to not drive away drunk with **D.B.W.**

**-67-**

**MS. BOATWRIGHT** reported **MR. WARAKANBANCHA'S** drunk driving and reckless
conduct by driving drunk with **D.B.W.** to the Glynn County Police Department.

**-68-**

The police did nothing.

**-69-**

**MR. WARAKANBANCHA** Instant-messaged **MS. BOATWRIGHT** and **MRS. SWAIN**
after **MS. BOATWRIGHT** called the Glynn County Police Department.

**-70-**

In his message, **MR. WARAKANBANCHA** expressed disbelief that **MS.
BOATWRIGHT** called the police to report his drunk driving.

**-71-**

**MR. WARAKANBANCHA** reminded **MS. BOATWRIGHT** of the futility of reporting
him to the Glynn County Police Department because the police protected **MR.
WARAKANBANCHA**.

**-72-**

MR. WARAKANBANCHA called MS. BOATWRIGHT a "dumba\*\*" because she knew that the Glynn County Police Department officers protected MR. WARAKANBANCHA.

**-73-**

After DEPARTMENT'S illegal seizures, ordered seizures, and removals of D.B.W. from MS. BOATWRIGHT and MRS. SWAIN, DEFENDANT MCCORKLE took D.B.W. from MR. WARAKANBANCHA and placed D.B.W. with WENDI STRUBLE in Palm Coast, Florida.

**-74-**

DEFENDANT MCCORKLE did not have a court order.

**-75-**

For nearly half of the time D.B.W. spent under the illegal control of DEPARTMENT, MR. WARAKANBANCHA gave D.B.W. to MS. STRUBLE so that he could pursue his drunken ways and pursue under-aged females.

**-76-**

On August 11, 2021 counsel inquired at the Glynn County Juvenile Court for any court order concerning D.B.W.

**-77-**

No court order existed.

**-78-**

On August 11, 2021, counsel entered an appearance in *In the Interest of D.B.W.*, Case No. JUV210031, Glynn County Juvenile Court.

**-79-**

On the next day, having had its illegal seizure, orders for seizure, and removal of **D.B.W.** exposed, **DEPARTMENT**, for the first time, sought judicial intervention concerning **D.B.W.**

**-80-**

On August 13, 2021, **DEPARTMENT** filed a Complaint and a Petition for Dependency in *In the Interest of D.B.W.*, **Case No. JUV210030, Glynn County Juvenile Court**.

**-81-**

The Glynn County Juvenile Court ordered **DEPARTMENT** to return **D.B.W**. immediately to Georgia from **MS. STRUBLE** in Florida.

**-82-**

On September 7, 2021, *nunc pro tunc*, August 12, 2021, the Glynn County Juvenile Court awarded **DEPARTMENT** temporary legal custody of **D.B.W.** in *In the Interest of D.B.W.*, **Case No. JUV210031, Glynn County Juvenile Court**.

**-83-**

**DEPARTMENT** asked **MRS. SWAIN** to drive to Florida to retrieve **D.B.W.**

**-84-**

For nearly four months **D.B.W.** thrived with **MRS. SWAIN**, with **MRS. SWAIN** having established a loving, caring relationship through this and the other times **MRS. SWAIN**  cared for **D.B.W.**

**-85-**

On November 29, 2021 the Glynn County Juvenile Court approved the **DEPARTMENT'S** placement change of **D.B.W.** from **MRS. SWAIN** to the paternal aunt, **WHITNY RINEHART**.

-86-

The Glynn County Juvenile Court asserted that it did not need a reason to approve the **DEPARTMENT'S** placement change.

-87-

From that date forward, **DEPARTMENT** terminated **MRS. SWAIN'S** contact with **D.B.W.**

-88-

**MRS. SWAIN**, the only person who took **D.B.W.** to a doctor over the last two years, could see **D.B.W.** only on **MS BOATWRIGHT'S** supervised visitations at **DEPARTMENT'S** office.

-89-

**DEPARTMENT** advised **MRS. SWAIN** that if she wanted to see **D.B.W.**, **MRS. SWAIN** needed to make up with the putative father because the putative father would be getting custody of **D.B.W.**

-90-

Counsel filed for statutory discovery in *In the Interest of D.B.W.***, Case No. JUV210031, Glynn County Juvenile Court** on December 30, 2021.

-91-

Despite the Glynn County Juvenile Court's March 7, 2022 order directing the *guardian ad litem* to review the **DEPARTMENT'S** file and provide counsel the relevant parts of the **DEPARTMENT'S** file, counsel still has no discovery.

-93-

Counsel ordered the transcript of the November 29, 2021 hearing on March 3, 2022.

-94-

The court reporter said that he would likely have it over the weekend of March 3-7, 2022.

-95-

Counsel inquired in person of the court reporter on March 7, 2022.

-96-

The court reporter said he needed juvenile court approval to provide counsel with the transcript.

-97-

Counsel still has not received the transcript.

-98-

**MRS. SWAIN** has witnesses who will testify to **MR. WARAKANBANCHA'S** incest with at least two of his sisters, **MS. RINEHART'S** financial inability to care for **D.B.W.**, **MS. RINEHART'S** and her family's unsuitability for raising **D.B.W.**, **MS. RINEHART'S** chronic health condition that has previously incapacitated her, and **MR. WARAKANBANCHA'S** pursuit of under-aged girls, among other things.

-99-

**MR. WARAKANBANCHA** admitted that he sleeps in the same bed with **D.B.W.** in a locked room.

-100-

**MRS. SWAIN**  has filed a motion to intervene in ***In the Interest of D.B.W.*, Case No. JUV210031, Glynn County Juvenile Court**.

**-101-**

**MRS. SWAIN** has filed a motion for permanent custody in *Patricia B. Swain v. Brittney D. Boatwright*, **Warakan Warakanbancha, and Georgia Department of Human Services, Civil Action No. CE22-00053, Glynn County Superior Court** in which **MS. BOATWRIGHT** consented.

**-102-**

A juvenile court does not have jurisdiction to hear a permanent custody case **UNLESS** the superior court transfers the case to juvenile court.

**-103-**

The juvenile court judge presiding over the juvenile court proceedings contended that juvenile court procedures did not authorize that court to hear the above witnesses at this point in the proceedings.

**-104-**

**MRS. SWAIN** filed her petition for permanent custody under O.C.G.A. §19-7-1, which allows a court to hear evidence immediately on the issue of the best interest of **D.B.W.**

**-105-**

**MRS. SWAIN** also filed a motion to intervene.

**-106-**

Defendants in the superior court case moved to transfer to juvenile court.

**-107-**

The superior court judges appoint juvenile court judges *pro hac vice* to hear domestic cases along with the superior court judges.

**-108-**

A superior court judge assigned **MRS. SWAIN'S** petition for permanent custody to the senior Glynn County Juvenile Court judge sitting as a superior court judge and the second of two judges in the Glynn County Juvenile Court.

**-109-**

The superior court judge had knowledge of the underlying circumstances of the juvenile case.

**-110-**

The Court of Appeals of Georgia in ***Kasper v. Martin***, **841 S.E.2d 488 (2020)**, reversed that same juvenile court judge sitting *pro hac vice*, for dismissing another litigant's permanent custody petition filed in superior court during the pendency of a dependency case in juvenile court.

**-111-**

Counsel learned at the transfer hearing that the sitting superior court judge had assigned the permanent custody case to the judge reversed in ***Kasper***.

**-112-**

Counsel sought to be heard on this assignment by the superior court.

**-113-**

The superior court indicated that it knew the status of the underlying issues between the juvenile court and superior court cases, but nonetheless assigned it to the reversed juvenile court judge sitting *pro hac vice* over counsel's objection.

**-114-**

The superior court rejected counsel's request to be heard.

**-115-**

Counsel then objected to the transfer before the reversed juvenile court judge sitting *pro hac vice.*

**-116-**

This judge likewise rejected counsel's request to be heard, stating that it had ruled, and transferred the case to that same judge's juvenile court to the judge already presiding over the other juvenile court cases.

**-117-**

**DEFENDANT JOHN/JANE DOE TWO** and **THREE** coerced **MS. BOATWRIGHT** into signing a safety plan in submitting to **DEPARTMENT** demands without informing **MS. BOATWRIGHT** that the safety plan has no legal authority.

**-118-**

**DEPARTMENT** has an unconstitutional policy promulgated in a written policy statement, ordinance, regulation or decision in that like in this case that permits **DEPARTMENT** employs to use this tatic.

**-119-**

**DEPARTMENT** routinely misrepresents the legal authority of safety plans and uses them to coerce parents into relinquishing their children to **DEPARTMENT** or to some other person/entity designated by **DEPARTMENT** even when **DEPARTMENT** has little or no evidence warranting the seizure or removal of the child(ren) from the parents.

**-120-**

**DEPARTMENT** also has an unwritten policy or custom of deliberate indifference in the hiring, training, and supervision or discipline of **DEPARTMENT** employees in the unlawful removal of children from their parents.

**-121-**

**DEPARTMENT** knows and endorses its employees' coercion of parents into signing safety plans in which the parents relinquish their children to **DEPARTMENT** or seizes or orders the seizures or removals of child(ren) from the parent(s) without a court order.

**-122-**

**DEPARTMENT** also unwritten customs and persistent patterns or practice of seizing and removing children from parents without a court order, coercing parents into relinquishing their children to **DEPARTMENT**, or placing children away from the parent(s).

**-123-**

**DEPARTMENT** either encourages or willfully ignores these practices.

**-124-**

**MS. BOATWRIGHT** and **MRS. SWAIN** have been told of a hearing on or about May 5, 2022 hearing on the putative father's legitimation petition with which **MS. BOATWRIGHT** has not been served.

**-125-**

All **DEFENDANTS** operate under color of state law.

## VII. CLAIMS FOR RELIEF

### COUNT I

**VIOLATION OF FOURTEENTH AMENDMENT
UNITED STATES CONSTITUTION
DUE PROCESS
FAMILY INTEGRITY/FAMILY RELATIONS
42 U.S.C. § 1983**

**-126-**

**DEFENDANTS MCCORKLE,  JANE /JOHN DOE NUMBER TWO** and **THREE** seized, removed, or directed the seizure or removal of **D.B.W.** from **MS. BOATWRIGHT** and **MRS. SWAIN** without a court order.

**-127-**

These actions by these **DEFENDANTS** violated **D.B.W.'S** right to family integrity/family relations protected by the Fourteenth Amendment to the United States Constitution.

**-128-**

As a direct and proximate result of **DEFENDANTS MCCORKLE,  JANE /JOHN DOE NUMBER TWO** and **THREE'S** deprivation of  **D.B.W.'S** rights to family integrity, **D.B.W.** has suffered and continues to suffer substantial damages for violation of her Fourteenth Amendment rights in an amount not less than **FIVE MILLION DOLLARS ($5,000,000.00)**.

**-129-**

**DEFENDANTS MCCORKLE,  JANE /JOHN DOE NUMBER TWO** and **THREE** undertook their conduct in utter disregard of **D.B.W.'S** rights that constituted  an entire want of care which  raises  the  presumption  of the  conscious indifference to the consequences so as to entitle

**D.B.W.** to recover punitive damages in an amount to be decided by a jury to deter **DEFENDANTS**

**MCCORKLE,  JANE /JOHN DOE NUMBER TWO** and **THREE** from future wrongdoing

### COUNT II

**VIOLATION OF FOURTEENTH AMENDMENT**
**UNITED STATES CONSTITUTION**
**DUE PROCESS**
**FAMILY INTEGRITY/FAMILY RELATIONS**
**DELIBERATE INDIFFERENCE FAILURE TO TRAIN**
**42 U.S.C. § 1983**

**-130-**

**DEFENDANTS BROCE**, **ASKEW**, and **JANE /JOHN DOE NUMBER ONE** knew of

the  unwritten customs and persistent patterns or practice of seizing and removing children from

parents without a court order, coercing parents into relinquishing their children to **DEPARTMENT**

without a court order, misrepresenting the safety plans as a court order which **DEPARTMENT** used

to seize or remove children from their parents, or placing children away from the parent(s) without

a court order.

**-131-**

These **DEFENDANTS** encouraged their employees to use these unwritten customs and other

persistent patterns or practice in interfering with integrity of families without court order.

**-132-**

These **DEFENDANTS** deliberately failed to train its employees in the lawful method of

obtaining custody of children.

**-133-**

If these **DEFENDANTS** offered and training in the lawful seizure and  removal of children

from their families, these **DEFENDANTS** ignored violations of the training.

-134-

As a direct and proximate result of **DEFENDANTS BROCE, ASKEW** and **JANE /JOHN DOE NUMBER ONE'S** conduct that deprived  **D.B.W.** of her right to family integrity/relations, **D.B.W.** has suffered and continues to suffer substantial damages for violation of her Fourteenth Amendment rights in an amount not less than **FIVE MILLION DOLLARS ($5,000,000.00)**.

-135-

**DEFENDANTS BROCE, ASKEW** and **JANE /JOHN DOE NUMBER ONE**  undertook their conduct in utter disregard of **D.B.W.'S** rights that constituted  an entire want of care which raises the presumption of the conscious indifference to the consequences so as to entitle **D.B.W.** to recover punitive damages in an amount to be decided by a jury to deter **DEFENDANTS BROCE, ASKEW** and **JANE /JOHN DOE NUMBER ONE** from future wrongdoing

## COUNT III

**VIOLATION OF FOURTH AMENDMENT
UNITED STATES CONSTITUTION
UNLAWFUL AND UNREASONABLE SEIZURE
42 U.S.C. § 1983**

-136-

**DEFENDANTS MCCORKLE,  JANE /JOHN DOE NUMBER TWO** and **THREE** seized, removed or directed the seizure and removal of **D.B.W.** from **MS. BOATWRIGHT** and **MRS. SWAIN** without court order, probable cause, or exigent circumstances.

-137-

The seizure of **D.B.W.** was unreasonable and without authorization of law.

-140-

**MRS. SWAIN** had **D.B.W.** and had cared for **D.B.W.** and established a loving caring bond with **D.B.W.**

-141-

**DEFENDANTS MCCORKLE, JANE /JOHN DOE NUMBER TWO** and **THREE** had no reason to seize **D.B.W.** without a court order and transferred **D.B.W.** to her putative father, and not legal father, who had no rights to **D.B.W.**

-142-

As a direct and proximate result of **DEFENDANTS MCCORKLE, JANE /JOHN DOE NUMBER TWO** and **THREE'S** deprivation of **D.B.W.'S** Fourth Amendment rights, **D.B.W.** has suffered and continues to suffer substantial damages for violation of her Fourth Amendment rights in an amount not less than **FIVE MILLION DOLLARS ($5,000,000.00)**.

-143-

**DEFENDANTS MCCORKLE, JANE /JOHN DOE NUMBER TWO** and **THREE** undertook their conduct in utter disregard of **D.B.W.'S** rights that constituted an entire want of care which raises the presumption of the conscious indifference to the consequences so as to entitle **D.B.W.** to recover punitive damages in an amount to be decided by a jury to deter **DEFENDANTS MCCORKLE, JANE /JOHN DOE NUMBER TWO** and **THREE** from future wrongdoing

## COUNT IV

## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

### -144-

**MS. BOATWRIGHT** and **MRS. SWAIN** seek to enjoin the proceedings in both Glynn County Juvenile and Superior Courts.

### -145-

**MS. BOATWRIGHT** and **MRS. SWAIN** seek this because, among other reasons:

a)      **DEPARTMENT** can place **D.B.W.** without regard to the best interest of **D.B.W.**;

b)      Have placed **D.B.W.** with the putative father family without the putative father legitimizing **D.B.W.**;

c)      The juvenile court ignores the lack of evidence of a reason to change the placement from **MRS. SWAIN** to putative father's family;

d)      No mechanism exists in juvenile court to have a full and fair hearing on **MRS. SWAIN'S** complaint for permanent custody that leaves **D.B.W.** languishing away from family where **D.B.W.** has thrived;

e)      The juvenile court kept the transcript of the November 29, 2021 hearing from counsel;

f)      The juvenile court has entrusted the dissemination of statutory discovery to the court-appointed *guardian ad litem* who has not provided counsel with anything;

g)      The juvenile court procedures do not permit **MS. BOATWRIGHT** and **MRS. SWAIN** to present their witnesses pending **DEPARTMENT'S** final placement of **D.B.W.**;

h)   The judge reversed in ***Kasper v. Martin*, 841 S.E.2d 488 (2020)** hear the transfer motion of **MRS. SWAIN'S** superior court case and transferred it to his court;

i)   No one has given any consideration to the over two-year absence of **D.B.W.** from **MS. BOATWRIGHT** and **MRS. SWAIN** while **MRS. SWAIN** had a close relationship with **D.B.W.**; and

j)   The putative father has yet to legitimize **D.B.W.** although counsel understands that there is a hearing scheduled, although **MS. BOATWRIGHT** has not been served.

**-146-**

**MS. BOATWRIGHT** and **MRS. SWAIN** seek an Order temporarily and permanently enjoining **DEPARTMENT** from implementing written and  unwritten customs and persistent patterns or practice of seizing and removing children from parents without a court order, coercing parents into relinquishing their children to **DEPARTMENT**, or placing children away from the parent(s) without a court order.

**-147-**

**MS. BOATWRIGHT** and **MRS. SWAIN** seek an Order permanently enjoining **DEPARTMENT** from implementing procedures in which it  misrepresents the safety plans as having legal authority and using them to coerce parents into relinquishing their children to **DEPARTMENT** or to someone designated by **DEPARTMENT**.

unwritten customs and persistent patterns or practice of

**-148-**

**DEFENDANT JOHN/JANE DOE TWO** and **THREE** coerced **MS. BOATWRIGHT** with a safety plan in submitting to **DEPARTMENT** demands without informing **MS. BOATWRIGHT** that the safety plan has no legal authority.

**-149-**

**DEPARTMENT** has an unconstitutional policy promulgated in a written policy statement, ordinance, regulation or decision in that as in this case, **DEPARTMENT** misrepresents the safety plans as having legal authority and use it to coerce parents into relinquishing their children to **DEPARTMENT** or to someone designated by **DEPARTMENT** when **DEPARTMENT** has little or no evidence warranting the seizure or removal of the child(ren) from the parents.

**-150-**

**DEPARTMENT** also has a policy or custom of deliberate indifference to the hiring, training, supervision or discipline of **DEPARTMENT** employees in coercing parents into relinquishing their children to **DEPARTMENT**, or allowing **DEPARTMENT** to place children away from the parent(s), or, like here, outright seizure and  removal of the child(ren) from the parent(s) without a court order.

**-151-**

**DEPARTMENT** also unwritten customs and persistent patterns or practice of seizing and removing children from parents without a court order, coercing parents into relinquishing their children to **DEPARTMENT**, or placing children away from the parent(s).

**-152-**

**MS. BOATWRIGHT** and **MRS. SWAIN** seek to enjoin the proceedings in juvenile court and require **MRS. SWAIN'S** permanent custody to be transferred back to superior court and assigned to a different superior court judge.

-153-

**MS. BOATWRIGHT** and **MRS. SWAIN** seek these injunctions because they believe that should the juvenile court hold the legitimation hearing, that court may attempt to award permanent legal custody to the putative father and not give **MS. BOATWRIGHT** and **MRS. SWAIN** an opportunity to be heard on the evidence that they plan to present to show the unfitness of the putative father, thus frustrating the best interest of **D.B.W.**

## COUNT IV

## DECLARATORY RELIEF

-154-

**MS. BOATWRIGHT** and **MRS. SWAIN** seek declaratory relief regarding Glynn County Juvenile Court proceedings and **DEPARTMENT** conduct.

-155-

**MS. BOATWRIGHT** and **MRS. SWAIN** seek a declaration that **D.B.W.** has the right to pursue her rights to family integrity/relations.

-156-

**MS. BOATWRIGHT** and **MRS. SWAIN** seek a declaration that parents and children have a right to have **DEPARTMENT** follow the law and not misrepresent the use of safety plans to coerce parents and

-157-

**MS. BOATWRIGHT** and **MRS. SWAIN** seek a declaration that parents and children have a right to have **DEPARTMENT** follow the law and not unlawfully seize or direct the seizure of children without court order.

**COUNT V**

**ATTORNEY FEES**
**CIVIL RIGHTS ATTORNEY'S FEES AWARDS ACT OF 1976**
**42 U.S.C. §1988**

**-158-**

Should **MS. BOATWRIGHT** and **MRS. SWAIN** prevail, they seek attorney fees under the Civil Rights Attorney's Fees Awards Act of 1976, as amended and codified at 42 U.S.C. §1988.

**WHEREFORE**, **BRITTNEY D. BOATWRIGHT**, as Mother and Next Best Friend of **D.B.W.,** a Minor Child and **PATRICIA B.   SWAIN**, as Great grandmother and Next Best Friend of **D.B.W.**, a Minor Child, pray that the Court:

a)      Issue preliminary and permanent injunctions prohibiting **DEPARTMENT** and its employees from, without a court order, coercing parents into relinquishing their children to **DEPARTMENT**, or placing children away from the parent(s) without a court order.

b)      Issue preliminary and permanent injunctions prohibiting **DEPARTMENT** and its employees from implementing written and unwritten policies and procedures in which it misrepresents the safety plans as having legal authority and using them to coerce parents into relinquishing their children to **DEPARTMENT** or to someone designated by **DEPARTMENT**;

c)      Enjoin the proceedings in ***Warakan Warakanbancha v. Brittney Boatwright***, **Civil Action No.   CE19-00805, Glynn County Superior Court;    *Warakan Warakanbancha v. Brittney D. Boatwright*, Civil Action No.  CE21-00683, Glynn**

**County Superior Court;** and ***In the Interest of D.B.W.*, Case No. JUV220013, Glynn County Juvenile Court**

d)   Declare that **D.B.W.** has the right to pursue her rights to family integrity/relations, that parents and children have a right to have **DEPARTMENT** follow the law and not misrepresent the use of safety plans to coerce parents, and that parents and children have a right to have **DEPARTMENT** follow the law and not unlawfully seize or direct the seizure of children without court order.

e)   Schedule for the week of April 25 - 29, 2022 a hearing on the Injunction request;

f)   Upon hearing this case, the Court issue an interlocutory and preliminary injunction prohibiting the above;

g)   Upon a final hearing in this case, the Court make the interlocutory and preliminary injunction permanent;

h)   Process issue, that Defendants be served and be required to answer all as provided by law in such cases;

i)   Award compensatory and punitive damages as prayed for in this Complaint;

j)   Award penalties against Defendants for their unwarranted conduct in their frivolous, bad faith, and stubbornly litigious conduct;

k)   Award costs in this case;

l)   Award reasonable attorney fees; and

m)   Award such other and further relief as the Court may deem appropriate for the circumstances of this case.

**BRITTNEY D. BOATWRIGHT AND PATRICIA B. SWAIN DEMAND A JURY TRIAL**.

Respectfully submitted this 21st day of April 2022.

/s/James A. Yancey, Jr.
JAMES A. YANCEY, JR.
Attorney for Brittney D. Boatwright and Patricia B. Swain
State Bar of Georgia No.: 779725
James A. Yancey, Jr., Attorney at Law, P.C.
State Bar of Georgia No.: 779725
704 G Street
Brunswick, Georgia 31520-6749
(912) 265-8562 (Office)
(912) 265-8564 (Fax)
Email: jayjr@standinthegap.biz