# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

```
BRITTNEY D. BOATWRIGHT          )
as Mother and Next              )
Best Friend of D.B.W.,          )
a Minor Child, and              )
PATRICIA B. SWAIN,              )
as Great Grandmother            )
and Next Best Friend            )
of D.B.W., a Minor Child,       )
                                )
     Plaintiffs,                )
                                )
     v.                         )          2:22-CV-38
                                )
CANDICE L. BROCE,               )
in her individual and           )
official capacity as            )
COMMISSIONER, GEORGIA           )
DEPARTMENT OF HUMAN SERVICES,   )
et al.,                         )
                                )
     Defendants.                )
```

## ORDER

This action is before the Court on Defendants' motion to dismiss. Dkt. No. 18. For the reasons given below, the motion is **GRANTED**.

### BACKGROUND

On a motion to dismiss under a Rule 12(b)(1) facial attack for lack of subject matter jurisdiction, "the allegations in [the plaintiff's] complaint are taken as true for the purposes of the

motion." McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007).

This case arises out of a custody dispute and actions taken by the Georgia Department of Human Services and the Glynn County Division of Family and Children Services ["Departments"]. See Dkt. No. 1. ¶¶ 21–116. D.B.W. is a minor child. Id. ¶ 17. Mr. Warakanbancha is her biological father, Plaintiff Brittney Boatwright is her biological mother, and Plaintiff Patricia Swain is her great-grandmother. Id. ¶¶ 1, 2, 17–18. Ms. Boatwright and D.B.W. lived with Mrs. Swain until D.B.W. was approximately eight months old. Id. ¶ 24. When D.B.W. was approximately nine months old, Mr. Warakanbancha made a complaint about Ms. Boatwright to Departments. Id. ¶ 25. In response, Departments conducted a home check, which Ms. Boatwright passed. Id. ¶ 28. A few days later, Ms. Boatwright failed a drug test, and Mr. Warakanbancha "kidnapped" D.B.W., returning her after the Brunswick Police Department ordered him to do so. Id. ¶¶ 30–34. Thereafter, Departments threatened to remove D.B.W. from Ms. Boatwright unless she submitted a safety plan to the agency. Id. ¶ 35. Ms. Boatwright "signed a safety plan under coercion." Id. ¶¶ 35–36.

Later, Mr. Warakanbancha invited Ms. Boatwright and D.B.W. to his home allegedly to reconcile. Id. ¶ 37. At the house, Ms. Boatwright accepted water from Mr. Warakanbancha. Id. ¶ 39. Subsequently, Ms. Boatwright answered the door and lost

consciousness. Id. ¶ 41. While Ms. Boatwright was unconscious, Mr. Warakanbancha's mother and sister took D.B.W. and drove her to the Brunswick Police Department. Id. ¶¶ 45, 47. There they claimed that Ms. Boatwright had overdosed on heroin. Id. ¶ 48. When Ms. Boatwright regained consciousness, the police were present. Id. ¶ 43. She believed Mr. Warakanbancha had "surreptitiously placed a foreign substance" in her water, which caused her to lose consciousness. Id. ¶ 44. "Mr. Warakanbancha later admitted to Ms. Boatwright that '[he] did it,' an admission that he secretly drugged Ms. Boatwright." Id. ¶ 56.

According to the Complaint, in response to concerns about Ms. Boatwright's drug use and Mr. Warakanbancha and his family members kidnapping D.B.W., Departments removed D.B.W. from Ms. Boatwright's custody and conveyed D.B.W. to Mrs. Swain. Id. ¶¶ 51, 55. Later, Departments ordered that Mrs. Swain and Ms. Boatwright relinquish D.B.W. to Mr. Warakanbancha. Id. ¶ 57. Departments did not have a court order authorizing their actions. Id. Plaintiffs "complied because they believed that they could not legally resist [Departments'] commands because [Departments] represented the State of Georgia and had legal authority to order this." Id. ¶ 58. Departments subsequently modified D.B.W.'s custody arrangement again, placing her in the custody of a foster parent in Palm Coast, Florida. Id. ¶¶ 73–74.

On August 13, 2021, Departments filed a Complaint and Petition for Dependency in the Juvenile Court of Glynn County ("Juvenile Court"). Id. ¶ 80. The Juvenile Court awarded Departments temporary custody of D.B.W., and the agency placed D.B.W. with Mrs. Swain for nearly four months. Id. ¶¶ 82-84. Thereafter, the Juvenile Court approved Departments' change of D.B.W.'s placement from Mrs. Swain to D.B.W.'s paternal aunt, and Departments terminated Mrs. Swain's contact with D.B.W. Id. ¶ 85-87. Mr. Warakanbancha also filed legitimation petitions in the Superior Court of Glynn County ("Superior Court") and the Juvenile Court. Id. ¶ 21. After the Juvenile Court removed D.B.W. from Mrs. Swain's custody, Mrs. Swain filed a motion for permanent custody in the Superior Court. Id. ¶ 101. The Superior Court transferred Mrs. Swain's custody case to the Juvenile Court. Id. On May 9, 2022, the Juvenile Court orally ruled against Ms. Boatwright and Mrs. Swain, granted Mr. Warakanbancha's legitimation petition, and awarded Mr. Warakanbancha custody of D.B.W. Id.

Meanwhile, on April 1, 2022, Ms. Boatwright and Mrs. Swain filed this action. Dkt. No. 1; Dkt. No. 19-1 at 2.  The Juvenile Court had not entered a written order at the time Defendants moved to dismiss this case. Id.

In this suit, Plaintiffs allege claims both individually and on behalf of D.B.W. against Candice L. Broce, in her individual and official capacity as Commissioner of the Georgia Department of

Human Services; Lashawnda Askew and Jane/John Doe Number One in their individual and official capacities as directors of the Glynn County Department of Family and Children Services; Brandy McCorkle, who seized and removed D.B.W. under the authority of Departments; and Jane/John Doe Number Two and Jane/John Doe Number Three in their individual and official capacities as case workers for the Glynn County Department of Family and Children Services. See generally Dkt. No. 1. Plaintiffs allege two constitutional claims under § 1983:

1) violation of D.B.W.'s Fourteenth Amendment right to family integrity against all Defendants (Counts I and II), dkt. no. 1 ¶¶ 126-29, 130-35; and

2) violation of D.B.W.'s Fourth Amendment right to be free from unconstitutional seizures against Defendants McCorkle and Jane/John Doe Numbers Two and Three (Count III), id. ¶¶ 136-143.

Plaintiffs request the Court provide injunctive and declaratory relief. Id. ¶¶ 144-57. Specifically, Plaintiffs request that the Court:

1) enjoin the proceedings in Glynn County Juvenile Court and the Superior Court, id. ¶¶ 144-45;

2) enjoin Departments from implementing its allegedly unconstitutional "written and unwritten customs and persistent patterns or practice of seizing and removing

5

children from parents without a court order, coercing parents into relinquishing their children to [Departments], or placing children away from the parent(s) without a court order," id. ¶¶ 146–51;

3) "require Mrs. Swain's permanent custody to be transferred back to superior court and assigned to a different superior court judge," id. ¶ 152;

4) declare "that D.B.W. has the right to pursue her rights to family integrity/relations," ¶ 155;

5) declare "parents and children have a right to have [Departments] follow the law and not misrepresent the use of safety plans to coerce parents," id. ¶ 156; and

6) declare "that parents and children have a right to have [Departments] follow the law and not unlawfully seize or direct the seizure of children without court order," id. ¶ 157.

If they prevail in their action, Plaintiffs also seek attorney fees under the Civil Rights Attorney's Fees Awards Act of 1976, 41 U.S.C. § 1988. Id. ¶ 158.

Defendants filed a motion to dismiss under Rule 12(b)(1) and 12(b)(6). Dkt. No. 18. Defendants argue Plaintiffs' complaint should be dismissed due to (1) Eleventh Amendment and sovereign immunity, (2) the Younger Abstention Doctrine, (3) lack of subject matter jurisdiction under Rooker-Feldman, (4) failure to state a

claim for which relief may be granted, and (5) qualified immunity. Id. The issues are fully briefed, dkt. nos. 18, 19, 24, and thus ripe for review.

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may be asserted on facial or factual grounds. Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009). Facial challenges are "based solely on the allegations in the complaint," while factual challenges may refer to extrinsic evidence. Id. In a facial challenge to subject matter jurisdiction, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." McElmurray, 501 F.3d at 1251 (quoting Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)). Thus, "[a] 'facial attack' on the complaint 'requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" Id. (alterations accepted) (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)); see also Carmichael, 572 F.3d at 1279.

## DISCUSSION

Defendants assert a facial challenge to subject matter jurisdiction under Rule 12(b)(1) because their challenges "are based solely on the allegations in the complaint." Carmichael, 572

F.3d at 1279; Dkt. Nos. 18, 24. Because the Court lacks
jurisdiction to address Plaintiffs' claims, it need not address
Defendants' Rule 12(b)(6) challenges.

Plaintiffs concede that Eleventh Amendment immunity,
sovereign immunity, and the text of Section 1983 bar their official
capacity claims for money damages. Dkt. No. 19-1 at 3. Thus,
Plaintiffs' official capacity claims for money damages contained
in Counts I, II, and III are **DISMISSED**. Plaintiffs also withdraw
the portion of their complaint seeking to enjoin the related
actions in the Superior Court and the Juvenile Court because the
courts "have ruled adversely to Ms. Boatwright and Mrs. Swain."
Id. This portion of Count IV, dkt. no. 1 ¶¶ 144, 152, is therefore
**DISMISSED.**

Plaintiffs argue that by withdrawing the portion of the
complaint, the Younger[1] Abstention Doctrine is no longer
implicated. Id. Defendants respond that Younger abstention still
applies because state court proceedings were pending at the time
Plaintiffs filed their complaint and these proceedings provided
Plaintiffs an adequate opportunity to raise constitutional issues.
Dkt. No. 24 at 2-3. Defendants are correct.

The Younger Abstention Doctrine "derives from 'the vital
consideration of comity between the state and national

---

[1] Younger v. Harris, 401 U.S. 37 (1971).

governments,' which Younger itself characterized as a 'sensitivity to the legitimate interests of both State and National Governments.'" 31 Foster Child. v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003) (first quoting Luckey v. Miller, 976 F.2d 673, 676 (11th Cir. 1992); and then quoting Younger, 401 U.S. at 44). Younger abstention applies in three "exceptional circumstances": (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 70 (2013) (quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 367–68 (1989) (NOPSI)). Before invoking Younger, a court may also consider (1) whether there is "an ongoing state judicial proceeding," (2) whether "the proceedings implicate important state interests," and (3) whether "there [is] an adequate opportunity in the state proceedings to raise constitutional challenges." Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); see also Sprint Commc'ns, 571 U.S. at 81 (clarifying that "Younger extends to the three 'exceptional circumstances' identified in NOPSI, but no further" and that the Middlesex factors are "additional factors appropriately considered by the federal court before invoking Younger").

9

In <u>Moore v. Sims</u>, 442 U.S. 415, 423 (1979), the Supreme Court held that <u>Younger</u> barred federal interference with state proceedings for the temporary removal of a child in a child-abuse context. In that case, the Texas Department of Human Resources assumed temporary custody of three siblings in response to a report that one of the children had physical injuries apparently caused by his father. <u>Id.</u> at 419. The Department instituted a suit for emergency protection of the children under Title 2 of the Texas Family Code in state juvenile court. <u>Id.</u> at 420. Afterwards, the parents filed an action in federal district court raising several due process challenges to Title 2. <u>Id.</u> at 422. The district court found various parts of Title 2 unconstitutional and enjoined the state proceedings. <u>Id.</u> at 418.

The Supreme Court reversed, finding that the district court should have dismissed the complaint under <u>Younger</u>. <u>Id.</u> at 435. The Court recognized that "the State . . . was a party to the state proceedings, and the temporary removal of a child in a child-abuse context is, like the public nuisance statute involved in <u>Huffman</u> [<u>v. Pursue, Ltd.</u>, 420 U.S. 592 (1975)], 'in aid of and closely related to criminal statutes.'" <u>Id.</u> at 423. Thus, the case merited abstention under <u>Younger</u> and its progeny. <u>Id.</u> The Court further noted that "[f]amily relations are a traditional area of state concern," and the Court was "unwilling to conclude that state processes are unequal to the task of accommodating the various

interests and deciding the constitutional questions that may arise
in child-welfare litigation." Id. at 435 (footnote omitted).
Later, in NOPSI, 420 U.S. at 367-68, the Court cited Moore, 442
U.S. at 423, as an example of a state civil enforcement proceeding
where Younger applied.

Like Moore and Huffman, this case qualifies as a civil
enforcement proceeding. The kind of civil enforcement proceedings
to which the Court has extended Younger "have generally concerned
state proceedings 'akin to a criminal prosecution' in 'important
respects.'" Sprint Commc'ns, 571 U.S. at 79 (quoting Huffman, 420
U.S. at 604). "Such enforcement actions are characteristically
initiated to sanction the federal plaintiff, i.e., the party
challenging the state action, for some wrongful act"; "a state
actor is routinely a party to the state proceeding and often
initiates the action"; and "[i]nvestigations are commonly
involved, often culminating in the filing of a formal complaint or
charges." Id. at 79-80 (mentioning Moore, 442 U.S. at 419-20, a
"state-initiated proceeding to gain custody of children allegedly
abused by their parents," as an example of a civil enforcement
proceeding, to which Younger applies).

Here, Departments filed a Complaint and Petition for
Dependency in Glynn County Juvenile Court. Dkt. No. 1 ¶ 80. Just
as the Texas Department of Human Resources assumed emergency
custody of the children in Moore due to concerns of abuse,

Departments assumed custody of D.B.W. due to concerns about drug use and kidnapping. Dkt. No. 18 at 15 (citing Dkt. No. 1 at 6-7). For the same reasons the _Sprint_ and _NOPSI_ Courts characterized the custody proceeding in _Moore_ as a civil enforcement action "characteristically initiated to sanction the federal plaintiff," _Sprint_, 571 U.S. at 79, Departments' Complaint and Petition for Dependency qualifies as such a civil enforcement proceeding. Departments' action was initiated in response to Plaintiffs' allegedly deficient caretaking, Departments are state actors and initiated the proceeding, and investigations are commonly involved in such an action. See _id._ at 79-80; Dkt. No. 1 ¶¶ 42-43, 48, 51, 55, 57, 80.

The _Middlesex_ factors further support _Younger_ abstention. First, like the parents in _Moore_, Plaintiffs filed this action while there were ongoing state judicial proceedings in the state juvenile and superior courts. See _Middlesex_, 457 U.S. at 432. That the consolidated Juvenile Court proceeding later terminated does not alter this analysis for _Younger_ purposes. As the Supreme Court has held,

> [f]or _Younger_ purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign. For the same reason, a party may not procure federal intervention by terminating the state judicial process prematurely forgoing the state appeal to attack the trial court's judgment in federal court. "A necessary concomitant of _Younger_ is that a

12

party wishing to contest in federal court the judgment
of a state judicial tribunal must exhaust his state
appellate remedies before seeking relief in the District
Court."

NOPSI, 491 U.S. at 368-69 (1989) (alterations accepted) (quoting
Huffman, 420 U.S. at 608); see also 32A Am. Jur. 2d Federal Courts
§ 1036 (Nov. 2022 Update) ("As a general rule, the proper time of
reference for determining the applicability of Younger abstention
is the time that the federal complaint is filed." (footnote
omitted)). Because there were ongoing state judicial proceedings
at the time the complaint was filed and Plaintiffs have not alleged
that they exhausted state remedies, see generally dkt. no 1., the
state proceedings are considered "ongoing" for Younger purposes
even though the juvenile case has resolved.

Second, as the Moore Court recognized, "[f]amily relations
are a traditional area of state concern." 442 U.S. at 435;
Middlesex, 457 U.S. at 432. Third, Plaintiffs have not alleged
that they were not afforded an adequate opportunity to raise their
constitutional challenges in the state proceeding. Middlesex, 457
U.S. at 432. The Supreme Court has held that "a federal court
should assume that state procedures will afford an adequate remedy,
in the absence of unambiguous authority to the contrary." Pennzoil
Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987); see also 31 Foster
Child., 329 F.3d at 1279 ("Plaintiffs, having failed to raise their
federal claims in the ongoing state proceedings involving them,

must overcome this initial presumption [that the state procedures afford an adequate remedy] by demonstrating that the state remedies are inadequate."). Thus, like the <u>Moore</u> Court, this Court is similarly "unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation." 442 U.S. at 435; <u>see also</u> <u>J.B. v. Woodard</u>, No. 20-1212, 2021 WL 1903214, at *7 (7th Cir. May 12, 2021) ("[T]he Illinois domestic relations court is fully capable of respecting and adjudicating claims regarding [the plaintiff's] fundamental right to familial association. In the end, federal adjudication of [the plaintiff's] claims would 'reflect a lack of respect for the state's ability to resolve [the issues] properly before its courts.' The abstention doctrines' underlying principles of comity, equity, and federalism counsel us to abstain from exercising jurisdiction over [the plaintiff's] § 1983 claims." (internal citations omitted)).

As such, Plaintiffs' § 1983 claims against Defendants in their individual capacity—Counts I, II, and III—and Defendants' remaining requests for declaratory and injunctive relief—Count IV—are **DISMISSED** under <u>Younger</u>. Because dismissal of Plaintiffs' remaining claims contained in Counts I, II, III, and IV is merited under <u>Younger</u>, the Court need not address Defendants' other arguments in favor of dismissal. <u>See</u> Dkt. No. 18 at 7–9.

**CONCLUSION**

Plaintiffs concede that their official capacity claims for money damages are barred, so Defendants' motion to dismiss, dkt. no. 18, is **GRANTED** as to those claims contained in Counts I, II, and III. Plaintiffs withdraw the portion of their complaint seeking to enjoin the related actions in the Superior Court and the Juvenile Court, so Defendants' motion to dismiss, id., is **GRANTED** as to these claims in Count IV. Because the Court must abstain from deciding Plaintiffs' other claims under Younger, Defendants' motion to dismiss, id., is **GRANTED** as to Plaintiffs' remaining claims contained in Counts I, II, III, and IV. There being no claims remaining in this action, the Clerk is **DIRECTED** to **CLOSE** this case.

**SO ORDERED** this 8th day of March, 2023.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA